Filed 9/29/15  P. v. Ochoa CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050955 |
| v. | (Super. Ct. No. 11NF2717) |
| FELIPE OCHOA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*          \*          \*

## 1. Introduction

Felipe Ochoa (Defendant) appealed from the judgment entered following a jury verdict convicting him of counts 1, 3, 4, and 6 through 8, as charged by information. Appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), setting forth the facts of the case and requesting that we review the entire record. Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), appointed counsel provided issues to assist us in conducting our independent review. Defendant was granted 30 days to file written arguments in his own behalf, but did not file anything.

We have examined the entire record and counsel's *Wende/Anders* brief. After considering the entire record, we have found no reasonably arguable issue. (*Wende*, *supra*, 25 Cal.3d 436.) We therefore affirm.

## 2. Background

A consolidated complaint charged Defendant with offenses occurring on July 9, 2008 (counts 6 through 9) and May 18, 2011 (counts 1 through 4) (count 5 was not alleged against Defendant). An information charging the same counts was filed on December 7, 2011. The jury convicted Defendant as follows:

*Count 1:* Possession of a controlled substance (Health & Saf. Code, § 11377) as a lesser included offense of the charged offense of possession of a controlled substance for sale.

*Count 3*: Receiving stolen property. (Pen. Code, § 496, subd. (a).)

*Count 4*: Resisting arrest. (Pen Code, § 148, subd. (a)(1).)

*Count 6*: Transportation of a controlled substance. (Health & Saf. Code, § 11379, subd. (a).)

*Count 7*:  Possession for sale of a controlled substance.  (Health & Saf. Code, § 11378.)

*Count 8*:  Unauthorized use of personal identifying information.  (Pen. Code, § 530.5, subd. (a).)[1]

The trial court found true beyond a reasonable doubt the allegations under Penal Code section 12022.1, subdivision (b) that Defendant was released from custody on bail at the time of the commission of the offenses alleged in counts 1, 2, and 3.  The trial court sentenced Defendant to a total of four years eight months to be served in county jail pursuant to Penal Code section 1170, subdivision (h).

In May 2015, the trial court granted Defendant's petition for resentencing under Penal Code section 1170.18.  As a consequence, count 1 was reduced to a misdemeanor, sentence on that count was reduced to 364 days, and the enhancement under Penal Code section 12022.1, subdivision (b) associated with that count was dismissed.

## 3.  Facts

a.  *Events of July 9, 2008 (Counts 6, 7, and 8)*

On July 9, 2008, Jose Smith drove to Defendant's house.  At that time, Buena Park Police Officer Tom Carney, who had been investigating Defendant, was surveilling his house.  As Carney watched, Smith pulled into the driveway, and both Smith and Defendant, who was in the front passenger seat, got out of the car and walked into a partially opened garage.  Smith and Defendant stayed inside for about an hour.  When they walked back out, Defendant placed some items into the trunk of the car.  Smith got into the driver's seat, Defendant sat in the front passenger seat, and they drove away.

---

[1]  The trial court dismissed counts 2 and 9 pursuant to Penal Code section 1118.1.

Carney contacted Officer Kevin Gano, who followed the car driven by Smith and made a traffic stop on the grounds that the car did not have a front license plate and the registered owner of the car (Smith) had an outstanding warrant. While following Smith's car, Gano had seen movement between Smith and Defendant and saw Defendant bend down toward the floorboard.

After making the traffic stop, Gano approached Smith and asked for permission to search his car. Smith agreed. Inside the car, Gano found a pipe used to smoke methamphetamine, which Smith admitted was his. Under the passenger seat, Gano found a black cloth bag containing a digital scale, a large plastic bag containing a clear crystalline substance, three smaller baggies with Superman emblems and containing a clear crystalline substance, and a large number of unused plastic baggies with Superman emblems. A field test of the crystalline substance was positive for methamphetamine. Laboratory analysis of the substance in one baggie confirmed the substance contained methamphetamine.

In the trunk of the car, Gano found a laptop computer, a stereo, and a black notebook. On the front of the notebook was written, "Flipper's Notes." It was stipulated that "Flipper" was a nickname for Defendant, not a gang moniker. The notebook contained handwritten notes, including names with dollar amounts next to them, and the words "all access, user name, password, security question, card number, bank, account type, routing, account number and PIN number." Inside the notebook, labeled "Flipper's Notes," was a check from Mercury Insurance Group for $4,685.11 made payable to "T. Bleeker." A field investigator for Mercury Insurance testified that the check was different in numerous ways from a Mercury Insurance check and, in his opinion, the check had not been issued by Mercury Insurance.

Tarah Bleeker testified that she had opened a joint bank account with Defendant sometime in 2008 because they were friends and he could not open his own account. She did not give Defendant permission to put her name on the Mercury

4

Insurance check, she did not endorse the check, and she did not receive any money from the check. She conceded that when she was interviewed by police in 2008, she lied when she said she did not know about the bank account. She also testified that she had bought methamphetamine from Defendant.

Police officers searched Defendant's house and garage in connection with the July 9, 2008 investigation. Baggies with Superman emblems were found on a desk in the garage, near a notebook with "Mr. Flipper" written on the cover. The notebook also contained names, bank names, and various numbers. In Defendant's bedroom, police found a day planner, printer, printing paper, credit cards, check books in names other than Defendant's, licensee employment applications in names other than Defendant's, and two Mercury Insurance Company checks printed on the same paper as that found with the printer. One check was made payable to Leonardo Pacis in the amount of $2,213 and one was made payable to Meri Barnes in the amount of $3,700.

b. *Events of May 18, 2011 (Counts 1, 3, and 4)*

On May 18, 2011 at about 6:30 a.m., Anaheim Police Officer Richard Browning and Detective Greg Snell conducted a lawful search of Defendant's home. In the garage, they found two boxes of ammunition, two glass jars containing a crystalline substance, two digital scales, paperwork with Defendant's name on it, two straws, and a photograph of Defendant with others. The substance in the jars weighed 1.59 grams and tested positive for methamphetamine.

Near a desk in the garage, Browning found a can of acetone, gas fuel treatment, and an electric wok or cooking pan. A small surveillance camera was located under the eaves of the garage roof. Defendant admitted that the ammunition was his but denied that the other items belonged to him.

In the garage, the officers also found a car engine on a hoist and a transmission. Several hoses had been cut, suggesting the engine had been removed from

5

a car.  Angela Galvan testified that her car, a 2004 Acura RSX, had been stolen on April 29, 2011 from her carport.  She reported the car stolen and gave the police the vehicle identification number (VIN).  The car was recovered several days later, but the engine had been removed.  The VIN on Galvan's stolen car matched the VIN on the engine found in Defendant's garage.  The number on the transmission matched the corresponding number on the engine.

Defendant told Snell that he had purchased the engine from Pick Your Part auto wrecking company.  Pick Your Part did not have a record of an engine with the VIN on the engine found in Defendant's garage.  Galvan's insurance company did not have a record of sending the car to Pick Your Part.

Defendant was arrested, and while being taken to the patrol car, he became angry and tried to pull away from the police officer escorting him, Kelly Phillips.  Both Defendant and Phillips fell to the ground, and Phillips's face hit the bumper of a car.  Defendant began yelling.  Two or three other officers helped to subdue Defendant and carry him to the patrol car.  Because the patrol car did not have a protective cage, Phillips called for a police vehicle that had one.  While waiting for the police vehicle to arrive, Defendant continued to yell and scream about police brutality.

## 4. Analysis

We have reviewed the record in accordance with our obligations under *Wende* and *Anders*, and we find no arguable issues on appeal.  Defendant himself has not filed a supplemental brief raising any issues for our review.  (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.)  Counsel has suggested three issues to assist us in our review.  None has merit.

6

## 5.  Disposition

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.